Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 18, 2003      Decided February 27, 2004

No. 03-3043

UNITED STATES OF AMERICA,
APPELLEE

v.

DERRICK J. HEARD,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cr00266–01)

———

*Jensen E. Barber II*, appointed by the court, argued the cause and filed the brief for appellant.

*Jessie K. Liu*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher, Roy W. McLeese III*, and *Kristina L. Ament*, Assistant U.S. Attorneys.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: SENTELLE and GARLAND, *Circuit Judges,* and SILBERMAN, *Senior Circuit Judge.**

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: The United States and defendant Derrick Heard agreed to resolve a criminal charge against Heard through a plea agreement that called for a sentence of 48 months' imprisonment. The parties agreed to disagree, however, as to whether that sentence should run concurrently with, or consecutively to, a term of imprisonment that Heard was already serving for committing a different offense. The district court decided to run Heard's new sentence consecutively to his old one, so that the 48–month period would not commence until after Heard completed his existing sentence.

Heard now appeals, contending that the district court erred in not imposing a concurrent or partially concurrent sentence. The issue is governed by United States Sentencing Guideline § 5G1.3. Finding no error in the district court's determinations, we affirm the defendant's sentence.

I

On January 21, 2000, Heard was arrested after police officers, in the course of executing a search warrant at his apartment, found a revolver, 132 grams of crack cocaine, and approximately $2000 in cash. On May 5, 2000, Heard pled guilty to two counts stemming from the January 2000 arrest: possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a) and (b)(1)(A)(iii); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). Heard was released on his personal recognizance pending sentencing, as part of an agreement to cooperate with the government. On January 27, 2001, while still on release awaiting sentencing, Heard was again arrested — this time with 1.4 grams of crack in his possession.

---

* Senior Judge Silberman was a member of the panel at the time of oral argument, but did not participate in the decision.

On February 14, 2003, a United States District Judge for the District of Columbia sentenced Heard for his January 2000 offenses. The judge imposed concurrent sentences of 133 months' imprisonment on the cocaine count and 30 months' imprisonment on the firearm count.

Six days later, on February 20, 2003, Heard reached a plea agreement with the government regarding his January 2001 offense. That agreement was entered into pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C), which provides that a plea agreement may specify that "the attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case." FED. R. CRIM. P. 11(e)(1)(C) (2002).[1] Rule 11(e)(1)(C) further provides that "[s]uch a plea agreement is binding on the court once it is accepted by the court." *Id.*

Heard agreed to plead guilty to one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), for his January 2001 offense. In return, the government agreed to a sentence of 48 months' imprisonment. Both parties "specifically agreed not to put in the plea agreement whether the sentence, if the court were to accept it, would run concurrent[ly] or consecutively" to Heard's undischarged sentence for the January 2000 offenses, "but . . . rather reserve[d] that for argument at the time of sentencing." Hr'g Tr. at 6 (Apr. 18, 2003).

Prior to the sentencing hearing, the U.S. Probation Office prepared a Presentence Investigation Report (PSR) that calculated a sentencing range of 188–235 months' imprisonment under the United States Sentencing Guidelines. The Probation Office initially calculated Heard's criminal history category as III, and his base offense level as 18 — the latter because his offense involved 1.4 grams of cocaine base. PSR ¶¶ 13, 26; *see* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(11) (drug quantity table) (2002) [hereinafter

---

[1] By the time of the defendant's plea, Rule 11(e)(1)(C) had been recodified as Rule 11(c)(1)(C). *See* FED. R. CRIM. P. 11(c)(1)(C) (2003). The parties continue to refer to the Rule as 11(e)(1)(C), and, for purposes of consistency, we do so as well.

U.S.S.G.]; *id.* § 4A1.1 (criminal history categories). It then added a 3–level enhancement because Heard committed the offense while on release for another crime. PSR ¶ 14; *see* U.S.S.G. § 2J1.7.

A substantial further enhancement was required, however, because Heard's February 20, 2003, conviction, together with another previous conviction for a drug felony in 1990, rendered him a career offender under Guideline § 4B1.1(a). Under the career offender guideline, Heard's offense level was increased to 34 and his criminal history category was raised from III to VI. PSR ¶¶ 19, 27; *see* U.S.S.G. § 4B1.1(b).[2] After applying a 3–level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a)–(b), the Probation Office concluded that Heard's total offense level was 31. That, together with a criminal history category of VI, yielded a guidelines sentencing range of 188–235 months' imprisonment. PSR ¶¶ 20, 21, 57; *see* U.S.S.G. ch. 5, pt. A (sentencing table). The Probation Office noted, however, that the "Rule 11(e)(1)(C) plea agreement caps the defendant's custody range [at] 48 months." PSR ¶ 59.

On April 18, 2003, a district judge different than the one who had sentenced Heard for his January 2000 offenses held a hearing to determine whether to accept Heard's Rule 11(e)(1)(C) plea agreement. After both the defense counsel and the prosecutor stipulated that the PSR contained no material inaccuracies, the judge accepted the PSR "as findings of fact on the issues that are not in dispute." Hr'g Tr. at 3. The judge then noted "for context purposes what the guidelines calculation would be in this case," reciting the calculations set out above. *Id.* Next, the focus of the proceeding turned to whether the judge should accept the plea and how to impose the agreed-upon sentence relative to

---

[2] Guideline § 4B1.1(b) mandates a criminal history category of VI for all career offenders. It also mandates a base offense level of (at least) 34 when the instant offense of conviction carries a statutory maximum of 25 years or more, as does Heard's violation of 21 U.S.C. § 841(b)(1)(C) after having previously been convicted of a felony drug offense.

the defendant's undischarged term. In that respect, the judge stated that he was not "taking the prior offense conduct into account[,] . . . nor does the presentence report take it into account with respect to the sentence actually imposed, which again is the 11(e)(1)(C) sentence of 48 months." *Id.* at 36.

Both sides presented argument concerning the application of Guideline § 5G1.3, which guides a court in choosing between concurrent and consecutive sentences, to Heard's stipulated sentence. The defendant argued that his case fell within § 5G1.3(b), which requires the court to run the sentence for the instant offense concurrently with an undischarged term from a prior offense. Alternatively, the defendant argued that if the judge instead found that the case was governed by § 5G1.3(c) — which grants the court authority to run the sentence consecutively, concurrently, or partially concurrently — the judge should choose the latter. The district judge rejected both arguments and granted the government's request to run the sentence consecutively.

## II

The United States Code provides that, "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." 18 U.S.C. § 3584(a). In deciding whether to impose a term concurrently or consecutively, courts are directed to consider, inter alia, the Sentencing Guidelines. *Id.* §§ 3584(b), 3553(a)(4), 3553(b); *see United States v. Lafayette*, 337 F.3d 1043, 1050–52 (D.C. Cir. 2003). The relevant guideline is § 5G1.3, which is entitled "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment," and which is divided into three subsections applicable to three categories of cases. As we have previously explained, "subsection (a) describes the cases in which the district court must impose a consecutive sentence; subsection (b) describes those in which the sentence must be concurrent; and subsection (c) gives the court discretion, in 'any other case,' to sentence . . . consecutively

or concurrently" or partially concurrently. *United States v. Hall*, 326 F.3d 1295, 1300 (D.C. Cir. 2003).

Both parties agree that subsection (a) does not apply here. That subsection requires a consecutive sentence when "the instant offense was committed while the defendant was serving a term of imprisonment . . . or after sentencing for, but before commencing service of, such term of imprisonment." U.S.S.G. § 5G1.3(a). Heard did not commit the instant offense (the 2001 cocaine violation) while he was imprisoned or after he was sentenced for the prior offenses (the 2000 cocaine and firearm offenses), but rather while he was still awaiting sentencing for those offenses. Accordingly, the dispute focuses on the remaining two subsections of § 5G1.3, which, in the relevant (2002) edition of the Guidelines Manual,[3] provide as follows:

> (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense *shall be imposed to run concurrently* to the undischarged term of imprisonment.

> (c) (Policy Statement) In any other case, the sentence for the instant offense *may be imposed to run concurrently, partially concurrently, or consecutively* to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(b), (c) (emphasis added). The district court concluded that subsection (c) was the applicable subsection, that it gave the court discretion to determine how to run the sentences, and that a consecutive sentence was the most appropriate.

---

[3] A sentencing court must "use the Guidelines Manual in effect on the date that the defendant is sentenced," U.S.S.G. § 1B1.11(a), p.s., unless use of that version "would violate the *ex post facto* clause of the United States Constitution," in which event "the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed," *id.* § 1B1.11(b)(1).

Heard asserts two arguments on appeal: (1) that the district court erred in not applying subsection (b), which requires a concurrent sentence; and (2) that even if subsection (c) applies and the district court had discretion, the court abused that discretion by imposing a consecutive rather than partially concurrent sentence. As discussed below, Heard's first challenge turns on a question of law, which we therefore review de novo. *See United States v. Goodwin*, 317 F.3d 293, 297 (D.C. Cir. 2003). We review his second challenge only for abuse of discretion. *See United States v. Velasquez*, 136 F.3d 921, 923 (2d Cir. 1998) (collecting cases from several circuits).

## A

Heard's first contention is that the district court erred in not imposing a concurrent sentence pursuant to § 5G1.3(b). We note at the outset that we have some doubt as to whether that subsection has any application to a sentence imposed pursuant to a plea accepted under Rule 11(e)(1)(C). Subsection (b) applies only when "the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account *in the determination of the offense level* for the instant offense." U.S.S.G. § 5G1.3(b) (emphasis added). A sentence arising from a Rule 11(e)(1)(C) plea, however, does not result from the determination of an appropriate guidelines offense level, but rather from the agreement of the parties: an agreement that is "binding on the court once it is accepted by the court." FED. R. CRIM. P. 11(e)(1)(C). As we have previously noted, although a court is "free to consider the applicable Sentencing Guidelines range" in deciding "whether to accept an agreed-upon sentence" under Rule 11(e)(1)(C), it is "not compelled to do so." *United States v. Goodall*, 236 F.3d 700, 705 (D.C. Cir. 2001). Nonetheless, because the government does not press this point, because sentences under Rule 11(e)(1)(C) are not wholly divorced from sentencing guideline calculations,[4] and because there may be at least some Rule 11(e)(1)(C) sentences that do rest

---

[4] *See* U.S.S.G. § 6B1.2(c), p.s. ("In the case of a plea agreement that includes a specific sentence [Rule 11(e)(1)(C)], the court may

on a determination of offense levels,[5] we will proceed as if the fact that Heard pled guilty pursuant to Rule 11(e)(1)(C) were not dispositive.[6]

Heard contends that § 5G1.3(b) governs his case because his 2000 offenses were "taken into account" in the following sense: the Probation Office recited them in the PSR, and the district court discussed them at the sentencing hearing. Appellant's Br. at 13. It is enough, Heard argues, that his prior offenses were "addressed at all." Oral Arg. Tape (Nov. 18, 2003). The question, however, is not whether those offenses were taken into account in some colloquial sense, but whether they were "fully taken into account in the determination of the offense level for the instant offense," as required by the words of the guideline.

A number of courts of appeals have held that a prior offense is not "taken into account" for purposes of § 5G1.3(b) unless the conduct underlying that offense is part of the "relevant conduct" — as defined by Guideline § 1B1.3(a) —

––––––––––

accept the agreement if the court is satisfied either that: (1) the agreed sentence is within the applicable guideline range; or (2) the agreed sentence departs from the applicable guideline range for justifiable reasons.") (brackets in original); *Goodall*, 236 F.3d at 705 (holding "that the policy statement in § 6B1.2 was promulgated to guide, not to constrain, courts in deciding whether to accept or to reject a plea agreement" and therefore is not binding on district courts).

[5] An argument could be made, for example, that a sentence imposed under a Rule 11(e)(1)(C) plea is in fact based on an offense level when the agreed-upon sentence is the same as that which would have resulted from using the applicable guidelines offense level.

[6] *Compare United States v. Williams*, 260 F.3d 160, 165 (2d Cir. 2001) (holding "that a district court is obligated to apply section 5G1.3(b) to Rule 11(e)(1)(C) plea bargains that are mute about how the sentence is to interact with an existing undischarged sentence"), *with id.* at 172 (Haden, J., concurring) (arguing that § 5G1.3(b) is inapplicable to a Rule 11(e)(1)(C) agreement "for the simple reason that [the court] was not required to, and in fact did not, 'determin[e] . . . [an] *offense level* for the instant offense'") (quoting § 5G1.3(b)).

used to determine the appropriate offense level for the instant offense.[7]  *See United States v. Johnson*, 324 F.3d 875, 878–80 (7th Cir. 2003); *United States v. Raleigh*, 278 F.3d 563, 568 (6th Cir. 2002); *United States v. Lange*, 146 F.3d 555, 556 (8th Cir. 1998); *United States v. Oser*, 107 F.3d 1080, 1084 (3d Cir. 1997); *United States v. Gondek*, 65 F.3d 1, 4 (1st Cir. 1995).  That view is supported by several considerations.  First, earlier editions of the Guidelines Manual contained language that suggested that only such relevant conduct can trigger § 5G1.3(b).[8]  Although that text was not retained in the 2002 edition applicable here, the Sentencing Commission did not suggest that it was making a material change when it deleted the language.[9]  To the contrary, the

---

[7] As is particularly relevant here, § 1B1.3(a) provides that, for certain offenses including drug crimes, a defendant's base offense level "shall be determined on the basis of [among other things] . . . all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. §  1B1.3(a)(2).

[8] In 1991, § 5G1.3(b) required concurrent sentencing where the "undischarged term of imprisonment resulted from offense(s) that constituted part of the same course of conduct as the instant offense and have been fully taken into account in the determination of the offense level for the instant offense."  U.S.S.G. § 5G1.3(b) (1991). In 1992, the text of the guideline was changed to the version that was in place at the time of Heard's sentencing in 2002, but an application note was added that provided: "Subsection (b) . . . addresses cases in which the conduct resulting in the undischarged term of imprisonment has been fully taken into account under § 1B1.3 (Relevant Conduct) in determining the offense level for the instant offense."  U.S.S.G. § 5G1.3(b), cmt. n.2 (1992).  Finally, in 1995, the Commission altered the application note to move the reference to § 1B1.3 from the introductory text of that note to its example, *see* U.S.S.G. § 5G1.3(b), cmt. n.2 (1995), which is how matters stood when Heard was sentenced in 2002, *see* U.S.S.G. § 5G1.3(b) & cmt. n.2 (2002).

[9] *See* U.S.S.G. app. C (vol. I), amendment 465 at 347 (2003) (stating reason for 1992 amendment); *id*. app. C (vol. I), amendment 535 at 468 (stating reason for 1995 amendment).

only example that the 2002 edition provides of a case appropriate for treatment under § 5G1.3(b) is one in which the prior offense conduct was in fact used as relevant conduct in determining the sentence for the instant offense:

> *Example*: The defendant is convicted of a federal offense charging the sale of 30 grams of cocaine. Under § 1B1.3 (Relevant Conduct), the defendant is held accountable for the sale of an additional 15 grams of cocaine, an offense for which the defendant has been convicted and sentenced in state court . . . . The guideline range applicable to the defendant is 10–16 months[, based on a base] offense level of 14 for sale of 45 grams of cocaine . . . .

U.S.S.G. § 5G1.3, cmt. n.2 (2002). And while we do not rely on subsequent developments to decide this case, we do note that the Sentencing Guidelines were amended at the end of last year to "clarif[y]" that "subsection (b) shall apply only to prior offenses that are relevant conduct to the instant offense of conviction and that resulted in an increase in the offense level for the instant offense." U.S.S.G. app. C (vol. II), amendment 660 at 410 (2003).[10]

Limiting subsection (b)'s requirement of concurrent sentences to cases in which the earlier offense is considered relevant conduct with respect to the instant offense is consonant with the Supreme Court's description of both the subsection's operation and its purpose:

> [T]he Guidelines . . . explicitly contemplate the possibility of separate prosecutions involving the same or overlapping "relevant conduct." . . . Because the concept of relevant conduct under the Guidelines is reciprocal, § 5G1.3 operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence. If a defendant is serving

---

[10] Subsection (b) now applies when "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under . . . § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense . . . ." U.S.S.G. § 5G1.3(b) (2003); *see id*. cmt. n.2(A), 2(B).

an undischarged term of imprisonment "result[ing] from offense(s) that have been fully taken into account [as relevant conduct] in the determination of the offense level for the instant offense," § 5G1.3(b) provides that "the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." . . . Significant safeguards built into *the Sentencing Guidelines therefore protect petitioner against having the length of his sentence multiplied by duplicative consideration of the same criminal conduct. . . .*

*Witte v. United States*, 515 U.S. 389, 404–05 (1995) (emphasis added) (brackets in original). Following the Supreme Court, many circuits have concluded that "[t]he guideline's purpose . . . is to prevent . . . double-counting" of the same offense conduct. *United States v. Garcia–Hernandez*, 237 F.3d 105, 109 (2d Cir. 2000).[11] When a prior offense constitutes relevant conduct with respect to the instant one, the Guidelines treat it as though it were part of the instant offense. *See* U.S.S.G. § 1B1.3; *supra* note 7. In such circumstances, the prior offense has necessarily "been fully taken into account in the determination of the offense level for the instant offense," and § 5G1.3(b) operates to prevent double-counting. Although there may be other circumstances that could result in double-counting — an issue we need not decide today — we agree with the Second Circuit that "in most instances only consideration similar to that given to relevant conduct will 'fully' take into account separate offenses." *Garcia–Hernandez*, 237 F.3d at 109 n.3.

---

[11] *See, e.g., United States v. Rangel*, 319 F.3d 710, 714 (5th Cir. 2003) ("Section 5G1.3 'operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence.'") (quoting *Witte*, 515 U.S. at 405); *United States v. Swan*, 275 F.3d 272, 277 (3d Cir. 2002) (Section 5G1.3(b) is "aimed at the situation in which, unless the sentences were concurrent, the defendant would be serving two sentences for essentially the identical offense."); *United States v. Caraballo*, 200 F.3d 20, 26 (1st Cir. 1999) ("[Section] 5G1.3(b)'s central aim is to ensure that no defendant is punished twice for the same crime. . . .").

Heard's January 2000 offenses were not taken into account as "relevant conduct" in determining (what, but for the Rule 11(e)(1)(C) plea, would have been) his offense level for the January 2001 offense, and the consecutive sentences did not otherwise cause him to suffer duplicative punishment. Both the Probation Office and the court treated the former as separate crimes, unrelated to the latter. The PSR calculated a base offense level using a drug quantity of only 1.4 grams of cocaine base, *see* PSR ¶ 13, rather than the total quantity involved in both the 2000 *and* 2001 offenses (133.4 grams), *see* Government's Br. at 20. And, the district judge — who was not the judge in Heard's first case — emphasized that "I don't even know the particulars of the prior offense conduct." Hr'g Tr. at 36.

Heard nonetheless argues that his earlier offenses were taken into account because they were part of the calculation that led to the PSR's designation of him as a career criminal, and hence to a higher guidelines range than otherwise would have been appropriate. Heard does not argue that the fact that the earlier offenses increased his criminal history category qualified him for subsection (b) treatment. Such an argument would be without merit, because subsection (b) only applies where the prior offense is taken into account "in the determination of the offense level" — not where it is taken into account in determining criminal history.[12] But Heard notes that the fact that he is a career criminal had a second effect on his guidelines calculation: it not only increased his criminal history category from III to VI, but it also increased his adjusted offense level from 18[13] to 31. *See supra* Part I.

---

[12] Under the Guidelines, the applicable sentencing range is determined by a combination of the defendant's offense level and criminal history category. *See* U.S.S.G. ch. 5, pt. A (sentencing table).

[13] Had Heard not been a career offender, his base offense level of 18 would have been increased by three because the instant offense was committed while he was on release, and then reduced by three because he accepted responsibility for his crime. *See* PSR ¶¶ 14, 20.

As a consequence, Heard's guidelines sentencing range jumped from 33–41 months to 188–235 months.[14]

Heard's argument has two defects. First, were we to apply § 5G1.3(b) to his case, Heard's 2001 offense would be penalty-free. If that offense's 48–month sentence were run concurrently with the 133–month sentence for the 2000 offenses, Heard would suffer no consequence for committing the second offense. Indeed, that would be the case for any career criminal whose prior offense carried a sentence substantially longer than did his instant offense, such that the latter is subsumed within the former if they are run concurrently. This would not simply vitiate the penalty-enhancing effect of the career criminal guideline; it would turn it on its head: while the sentence for a non-career criminal could be run consecutively under § 5G1.3(c), that for a career criminal would have to be run concurrently with the undischarged term under § 5G1.3(b). Surely the Sentencing Commission did not intend § 5G1.3 to treat those who fall under its career offender guideline more leniently than those who do not.

Second, this contention ignores the adverb "fully" in § 5G1.3(b)'s requirement that the prior offenses have been "*fully* taken into account" in determining the offense level for the instant offense. *See Swan*, 275 F.3d at 277 (declaring that § 5G1.3(b)'s "inclusion of the word 'fully' and the provision's purpose of avoiding double-counting indicate that more than just some effect on the offense level is required"); *see also Duncan v. Walker*, 533 U.S. 167, 175 (2001) (rejecting a construction that would render a word in a statute "insignificant, if not wholly superfluous"). Even if we continue to ignore the fact that there was no true "offense level" involved in this Rule 11(e)(1)(C) sentence, and even if we do not require Heard's 2000 offenses to have been used as relevant conduct with respect to the 2001 offense, there is still no sense in which those prior offenses were "fully" taken into account in determining the "offense level" for Heard's 2001

---

[14] *See* U.S.S.G. ch. 5, pt. A (sentencing table) (listing a range of 33–41 months for offense level 18 and criminal history category III, and 188–235 months for level 31 and category VI).

offense. As we noted in Part I above, the offense level appropriate for Heard's conduct and career criminal status was 31. Combined with a criminal history category of VI, that offense level would have yielded a guidelines sentencing range of 188–235 months. The district court, however, imposed a sentence of only 48 months — 140 months below the lower boundary of the guidelines range. Thus, even if the *Probation Office* did "take[ ] into account" Heard's prior offense in calculating what his offense level would have been under the career criminal guideline, the *district court* did not "fully" do so when it imposed a sentence that bore no relationship to that offense level. As the court emphasized, Heard's prior offense conduct was not "take[n ] into account with respect to the sentence actually imposed, which again is the 11(e)(1)(c) sentence of 48 months." Hr'g Tr. at 36.

For the foregoing reasons, we conclude that § 5G1.3(b), and its requirement that the court impose a sentence to run concurrently with an undischarged term of imprisonment, does not apply to this case.

### B

Where subsections (a) and (b) of Guideline § 5G1.3 are inapplicable, the applicable subsection is (c), which provides:

> (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(c). Applying that subsection, the district court determined that it was appropriate to impose Heard's 48–month sentence consecutively to his prior undischarged term of imprisonment. The defendant contends that, even if subsection (c) is the appropriate provision, the district court erred by declining to exercise its authority to impose a partially concurrent sentence under that subsection.

By contrast to subsections (a) and (b) — which command that the instant sentence "shall be" imposed to run consecu-

tively if the case falls within (a) and concurrently if it falls within (b), *see id.* § 5G1.3(a), (b) — subsection (c) plainly leaves the decision "[i]n any other case" to the discretion of the district court. For cases in that category, the sentence "may be" imposed to run "concurrently, partially concurrently, or consecutively." *Id.* § 5G1.3(c); *see Hall*, 326 F.3d at 1300. The breadth of the court's discretion is made clear by the criterion the subsection provides to guide it: the choice is to be made "to achieve a *reasonable* punishment for the instant offense." U.S.S.G. § 5G1.3(c) (emphasis added). And it is further evidenced by the long and indeterminate list of factors that the commentary to the subsection sets forth for the court's consideration in making its choice, including, inter alia, "any other circumstance relevant to the determination of an appropriate sentence for the instant offense." *Id.* § 5G1.3, cmt. n.3(d).[15] We may overturn the district court's exercise of its discretion under § 5G1.3(c) only if that discretion has been abused. *See Velasquez*, 136 F.3d at 923.

We detect no such abuse here. Heard's 48–month sentence was at least 140 months shorter than the 188–235 month term appropriate under the Sentencing Guidelines. *See supra* note 14. Even when that 48–month sentence is run consecutively to the 133–month sentence for his 2000 offenses, the total

---

[15] Application Note 3 states that, "[t]o achieve a reasonable punishment and avoid unwarranted disparity, the court should consider the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a))." U.S.S.G. § 5G1.3, cmt. n.3. Those factors include: "the nature and circumstances of the offense and history and characteristics of the defendant"; "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; and "the sentencing range . . . as set forth in the guidelines." 18 U.S.C. § 3553(a)(1)-(4). The application note also states that the court should, inter alia, "be cognizant" of: "the type . . . and length of the prior undischarged sentence"; "the time served on the undischarged sentence and the time likely to be served before release"; and "any other circumstance relevant to the determination of an appropriate sentence for the instant offense." U.S.S.G. § 5G1.3, cmt. n.3.

181–month sentence is still lower than the lowest guidelines sentence (188 months) Heard could have received for the instant offense alone. Accordingly, even if Heard's sentence is evaluated by the measure most favorable to him, he still received a substantial benefit for his plea bargain.

Heard, though, wants an even better result. He contends that the district court should have run his sentence partially concurrently so that the marginal increase in his total sentence was not 48 months, but only 33. He bases that argument on the fact that, without the enhancement for being a career criminal, his guidelines offense level would have been 18 and his criminal history category III, yielding a guidelines sentencing range of 33–41 months. *See supra* notes 13, 14. But the foundation of this argument is the contention that we have already rejected above: that by taking the 2000 offenses into consideration in designating Heard a career criminal, the sentence for the 2001 offense constitutes a form of double-counting. To the contrary, the court did not base the later sentence on the conduct underlying the prior offenses. Rather, it properly took into account the fact that Heard was a recidivist who had violated the trust of both the government and the court by committing another offense while on release.[16] As the judge said in explaining his decision:

> [T]here is a substantial degree of merit to the arguments that the government has made with respect to the seriousness of this offense and the context of this offense with respect to the ability of someone who is cooperating [with the government] to then go and commit offenses that are very inconsistent with release for cooperation purposes. When the court sorts all of that out, it comes down on the side of the sentence as agreed to in the plea

---

[16] *See Witte*, 515 U.S. at 400 ("In repeatedly upholding . . . recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes, but instead as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.") (internal quotation marks omitted).

agreement of 48 months being the appropriate sentence in a real sense for the conduct that is at issue here, which is the conduct that the defendant was charged with and pled guilty to in this case, not other conduct.

Hr'g Tr. at 44–45.

Finally, Heard urges a rule of lenity, arguing that because the plea agreement was ambiguous as to whether the sentence should be imposed consecutively or concurrently, we should construe it in his favor and choose the latter. But there was no ambiguity here. Instead, as defense counsel made clear at the sentencing hearing, *both* parties agreed to disagree — and expressly agreed to leave the matter for the district court to resolve. *Id.* at 6. For the reasons stated above, we conclude that in resolving the matter in favor of a consecutive sentence, the court neither erred as a matter of law nor abused its considerable discretion.

### III

The judgment of the district court is therefore

*Affirmed.*