[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 14, 2006
THOMAS K. KAHN
CLERK

No. 05-16610
Non-Argument Calendar

_____

D. C. Docket No. 05-00230-CR-2-JHH-TMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNY EARL GIBSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(June 14, 2006)**

Before CARNES, PRYOR  and FAY, Circuit Judges.

PER CURIAM:

Johnny Earl Gibson appeals his 115-month sentence, imposed after he pled

guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C.

§ 922(g)(1). On appeal he argues that (1) the district court improperly relied on hearsay evidence to support a sentencing enhancement for causing a substantial risk of serious bodily injury, and (2) he should have been given credit for time served on a discharged state conviction and sentence that formed the predicate for a sentencing enhancement for possessing a firearm in connection with another offense. For the reasons set forth more fully below, we affirm.

Gibson entered a guilty plea in open court to the afore-mentioned charge and admitted that, on September 26, 2000, a police officer observed him using bolt cutters to cut a lock off of a fence, and, when the officer approached, he fled. The officer chased Gibson into a pasture where Gibson eventually stopped running, removed a handgun from his waist band, dropped it on the ground, and was asked to place his hands in view. The government then stated that Gibson jumped up and "attacked" the arresting officer. Gibson, however, disputed the government's assertion that he had "attacked" the arresting officer, stating that when the officer asked him to get on the ground, he did not comply quickly enough, prompting the officer to spray mace at him. Thus, Gibson stated that he was just "trying to defend [himself]." Gibson's plea was accepted as free and voluntary.

A pre-sentence investigation report ("PSI") indicated that there had been a plea agreement in the case that was later withdrawn. In addition to the facts

admitted at the plea hearing, the PSI stated that, after Gibson removed the gun from his waist band, he ignored the officer's instructions to put his hands in view and told the officer that an accomplice was ready to shoot the officer in the back. Gibson told the officer to look behind, which the officer refused to do. Gibson then jumped up and attacked the officer, and, after another foot chase, the officer apprehended Gibson and seized the firearm Gibson had dropped on the ground.

The PSI, using the 1998 edition of the guidelines because they were more favorable to Gibson, set Gibson's base offense level at 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A) because he previously had been convicted of a controlled substance offense. Gibson next received a four-level enhancement because he possessed the firearm in connection with another felony offense, specifically the possession of burglary tools, for which he was ultimately convicted in state court in 2002. A three-level enhancement was also added, pursuant to U.S.S.G. § 3A1.2(b),[1] because the PSI, referencing the arrest report, found that Gibson had assaulted a police officer in a manner creating a substantial risk of serious bodily injury by punching the arresting officer in the stomach. Gibson received a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 for a total offense level of 24. Gibson was assessed 11 criminal history points, two of which

_____

[1] The 1998 guidelines called for a three-level enhancement while the most current manual called for a six-level enhancement, which is why the 1998 manual was used.

3

were added because Gibson committed the instant offense while on probation, for criminal history category V. At offense level 24 and criminal history category V, Gibson's recommended sentencing range was 92-115 months' imprisonment.

Gibson lodged several objections to the PSI, only two of which are relevant to this appeal. First, he argued that he did not assault his arresting officer "in a manner creating a substantial risk of serious bodily injury." The probation officer responded that the police report for the instant offense stated that, when asked to lie on the ground, Gibson jumped at a police officer and began punching the officer repeatedly in the stomach, causing the officer to "spray" at Gibson. Second, Gibson supplemented his objections and argued that he should be given credit for the three years' imprisonment he served for the state conviction (possession of burglary tools) underlying the four-level enhancement for possessing a firearm "in connection with another felony." Gibson had, at that time, been discharged from his state prison term, but the probation officer believed that, because the 1998 manual applied instead of the current one, there was no departure provision in the guidelines, and the only way to grant Gibson the relief he sought would be through a variance under 18 U.S.C. § 3553(a).

At the sentencing hearing, Gibson focused principally on these two objections. As to credit for time served, Gibson stated that the conduct he was

4

being sentenced for in the instant offense was part of the conduct that led him to be sentenced to three years in state court for possession of burglary tools. Based on that fact, he requested that the court consider giving him credit for that time, noting that the commentary to the current version of the guidelines would have permitted the court to consider a discharged term of imprisonment in addition to an undischarged one.

As to the enhancement for assaulting an officer, Gibson denied that he had assaulted the officer, and argued that the opposite might have occurred—that the officer might have assaulted Gibson—and noted that it was the officer's word against his and the charge of assault was dropped in state court. Gibson also argued that the government's only proof of what occurred was hearsay evidence that he disputed, and further argued that the government needed to prove the enhancement with something more. Gibson did admit, however, that the only evidence before the court was the hearsay statement. The government argued that it stood behind the facts set forth in the PSI and that the police report clearly stated that Gibson jumped at an officer and punched him continuously in the stomach until Gibson was sprayed with mace.

The district court overruled all of Gibson's objections. As to the ones relevant to this appeal, the court found that the three-level enhancement for

assaulting the officer was warranted because, according to the police report, Gibson jumped at the officer, punched him in the stomach continuously, and the officer, perceiving further harm to himself, sprayed Gibson. The court found that Gibson's actions created a substantial risk of serious bodily injury, and there was no evidence disputing these facts. As to the request for time served, the court first found that U.S.S.G. § 5G1.3(b) was inapplicable because Gibson's sentence had been discharged. It further construed Gibson's objection as a motion for a departure by virtue of his discharged sentence, and it denied that motion as well.

Thus, the district court adopted the PSI's findings, and found that Gibson's offense level was 24, criminal history category V, for a recommended sentencing range of 92 to 115 months' imprisonment. The court, considering the § 3553(a) factors, found that a strong case could be made for an upward variance given Gibson's history and characteristics and the need to protect the public from further harm, but it ultimately determined that a high-end sentence of 115 months' imprisonment was appropriate. There were no further objections.

On appeal, Gibson first argues that the three-level enhancement for assaulting the arresting officer "in a manner creating a substantial risk of serious bodily injury" was not warranted because Gibson denied that any such assault occurred and the government presented no evidence, other than unreliable hearsay,

6

to prove the allegation. He further argues that the district court impermissibly shifted the burden of proof to Gibson to rebut the government's hearsay evidence rather than requiring the government to reliably demonstrate by a preponderance of the evidence that the assault occurred. Lastly, Gibson cites to United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and argues that the court's reliance on hearsay statements "opposes the interest in fairness and reliability protected by the right to a jury trial and that is now enshrined in the Sixth Amendment."

"This Court reviews factual findings for clear error and the application of the United States Sentencing Guidelines to those facts de novo." United States v. Washington, 434 F.3d 1265, 1267 (11th Cir. 2006). "The burden of proof for establishing that a sentence enhancement is warranted lies with the prosecution and it is the duty of the district court to insure that the prosecution carries its burden of proof." United States v. Hernandez, 145 F.3d 1433, 1440 (11th Cir. 1998). Moreover, in resolving disputes regarding the applicability of a particular factor relevant to sentencing, a district court may consider any information, including hearsay, provided that the information has "sufficient indicia of reliability to support its probable accuracy." See United States v. Lee, 68 F.3d 1267, 1275 (11th Cir. 1995); U.S.S.G. § 6A1.3(a). "[T]he fact that evidence is hearsay is not

enough, in itself, to prevent a court from considering it. Instead, the focus is upon the question of its reliability, which must be determined on a case by case basis." Lee, 68 F.3d at 1275.

As a preliminary matter, while Gibson cites to Booker, he does not argue that the district court was prohibited from making factual findings, but does argue that the facts relied upon were unreliable. To the extent that he is arguing that the district court violated the Sixth Amendment by making factual findings at all, Gibson was sentenced post-Booker and the district court recognized that the guidelines, under which it made factual findings for sentencing enhancements, were advisory only. We have held that a district court does not err by making factual findings beyond a defendant's admissions and the charges in the indictment so long as it does so while applying the guidelines in an advisory fashion. United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2006). Accordingly, the district court did not violate Gibson's Sixth Amendment rights by making factual findings.

Turning to the enhancement at issue, the 1998 edition of the guidelines, as used in this case, provided for a three-level enhancement if "during the course of the offense or immediate flight therefrom, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious

bodily injury." U.S.S.G. § 3A1.2(b).[2]  The commentary provides that this section

"applies in circumstances tantamount to aggravated assault against a law

enforcement or corrections officer, committed in the course of, or in immediate

flight following, another offense."  Id., comment. (n.5).  "[I]ts applicability is

limited to assaultive conduct . . . that is sufficiently serious to create at least a

"substantial risk of serious bodily injury."  Id.  "Substantial risk of serious bodily

injury" includes "any more serious injury that was risked, as well as actual serious

bodily injury."  Id., comment. (n.6).

The evidence supporting the three-level enhancement under § 3A1.2 in this

case is two-fold.  First, there is the PSI, which relied on the police arrest report

written by the arresting officer.  As clarified at the sentencing hearing, that report

indicated that Gibson, after being ordered to lay on the ground, lunged at the

arresting officer and punched the officer in the stomach several times before being

sprayed, presumably with mace as Gibson claims.  As the arresting officer did not

testify at the hearing, the police report constituted an out of court statement offered

to prove the truth of the matter asserted, and was hearsay evidence.  See

---

[2] In 2004, Amendment 663 amended § 3A1.2 to provide for a six-level enhancement where a defendant, knowing or having reasonable cause to believe that a person was a law enforcement official, assaulted the officer during the course of the offense or immediate flight therefrom in a manner creating a substantial risk of serious bodily injury.  U.S.S.G. App C, Amend. 663; U.S.S.G. § 3A1.2(c) (2004).

9

Fed.R.Evid. 802.

We have recognized that the reliability of police reports is far from absolute. See United States v. Richardson, 230 F.3d 1297, 1300 (11th Cir. 2000). In Richardson, police reports were used to establish that two burglaries were committed on different days and at different locations for purposes of enhancing the defendant's sentence as an armed career criminal. Id. However, there the defendant did not contest the accuracy of the police reports, while here, Gibson disputed at least some of the facts in the police report.

The second piece of evidence is Gibson's plea colloquy, in which Gibson took issue with the government's factual basis concerning what happened at the time of his arrest. According to Gibson, when the officer ordered him to lay on the ground, Gibson did not act quickly enough, prompting the officer to spray mace in Gibson's face, at which point Gibson acted in self-defense. He, therefore, denied "attacking" the officer. Gibson offered no testimony at the sentencing hearing, and, in fact, conceded that the only evidence of what occurred at the time of his arrest was the hearsay police report.

Even giving Gibson the benefit of the doubt in this case, Gibson does not deny that he hit the police officer—his contention instead is that he acted to "defend [himself] as far as the mace." Thus, Gibson never said that he did not hit

the officer, only that he did so in self-defense and not as a way of "attacking" the officer in some pre-emptive manner or attempt to flee. Research revealed no cases drawing a distinction between hitting an officer in self-defense and hitting an officer in an attempt to flee. In either case, however, Gibson struck a police officer following a chase on foot, and, in so doing, arguably created a serious risk of serious bodily injury. At the very least, it cannot be said that the district court, taking the police reports together with Gibson's statements, erred by inferring that Gibson created a risk of substantial serious bodily injury by hitting an arresting officer. Cf. United States v. DeVaron, 175 F.3d 930, 945 (11th Cir. 1999) ("a trial court's choice between 'two permissible views of the evidence' is the very essence of the clear error standard of review").

Furthermore, it does not appear that the district court impermissibly shifted the burden of proof to the defendant. While the district court overruled Gibson's objection, stating that "[n]o evidence has been offered to dispute the asserted facts," the court was not shifting the burden to Gibson, but merely pointing out the obvious fact that there was no evidence disputing that Gibson struck an arresting officer. Gibson even admitted that all he had to offer the court was argument, not evidence. Thus, while the police reports and Gibson's recollection of events may have differed as to whether or not Gibson was sprayed before he hit the arresting

11

officer, the undisputed fact remains that the officer was hit. As that factual finding was not clearly erroneous, it was not error to apply the three-level enhancement under § 3A1.2(b).

Next, Gibson argues that the district court erred by failing to give him credit for time served on his Alabama state conviction in 2000 for possession of burglary tools, which resulted from the same arrest and conduct giving rise to the instant offense. He argues that, pursuant to U.S.S.G. § 5G1.3(b), his sentence should have been adjusted downward because, although his sentence was discharged at the time of his federal sentencing and an older version of the guidelines was used, the current version of the guidelines would have permitted the court to give credit. Thus, Gibson argues that the court should have given him either a downward departure under the current guidelines or a downward variance under 18 U.S.C. § 3553(a). Gibson argues that the district court's decision not to give credit for the time served on his discharged sentence was unreasonable.

We review de novo questions of subject matter jurisdiction. United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005). To the extent Gibson argues that the district court improperly applied or interpreted the guidelines, review is also de novo. Washington, 434 F.3d at 1267; United States v. Paley, 442 F.3d 1273, 1276 (11th Cir. 2006).

We first note that Gibson appears to take issue with the 1998 guidelines

being used in this case because, if the current edition of the manual had been used,

he believes he would have qualified for a departure for time served. To the extent

that Gibson is arguing that the wrong guidelines were applied, Gibson never

objected to the 1998 guidelines being used—most likely because he was saved an

additional three-levels under the current version of § 3A1.2. Any error in the

usage of the 1998 manual, therefore, was invited error, as Gibson obtained a

benefit in the form of a lesser enhancement, and the doctrine of invited error exists

to prevent a defendant from benefitting from an error at trial with the intention of

creating grounds for reversal on appeal. See United States v. Stone, 139 F.3d 822,

838 (11th Cir. 1998).

In any event, to the extent the error was not invited, Gibson's failure to

object to the use of the 1998 guidelines means that we review for plain error only.

United States v. Ndiaye, 434 F.3d 1270, 1280 (11th Cir. 2006). "To establish plain

error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects

substantial rights." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir.

2005). "If all three conditions are met, we may exercise our discretion to recognize

a forfeited error, but only if the error 'seriously affect[s] the fairness, integrity or

public reputation of judicial proceedings.'" Id. As the PSI identified a possible ex

13

post facto violation if a later version of the guidelines had been used, the district court's decision to sentence Gibson in accordance with the 1998 guidelines was not error. See U.S.S.G. § 1B1.11(b)(1). Furthermore, as discussed below, we conclude that the court's use of the 1998 guidelines did not prejudice Gibson in any way and the use of the 1998 guidelines did not affect the fairness, integrity, or public reputation of the proceedings.

The district court applied the 1998 edition of the guidelines because Gibson would obtain the benefit of a lesser enhancement under § 3A1.2. However, Gibson's core argument appears to be that the 1998 guidelines, unlike the present version, did not contain any provisions allowing a district court to take into account his time served on a discharged term of imprisonment that was based on conduct relevant to his present federal offense. The 1998 guidelines, as do the present edition, state that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). Moreover, the "Guidelines Manual in effect on a particular date shall be applied in its entirety. . . . However, if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." U.S.S.G. § 1B1.11(b)(2).

In 1998, the guidelines provided that, where an undischarged term of

14

imprisonment "resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b) (1998). Neither the definition nor the commentary to § 5G1.3 addressed a discharged term of imprisonment. Thus, under § 5G1.3(b), as it existed in 1998, the district court was correct not to take Gibson's discharged term of imprisonment into consideration. Neither of the parties, however, has addressed whether or not any subsequent amendments have clarified or made substantive changes to § 5G1.3 since 1998.

Effective November 1, 2002, the commentary of § 5G1.3 was amended to add the following:

> 7. Downward Departure Provision.—In the case of a discharged term of imprisonment, a downward departure is not prohibited if subsection (b) [of § 5G1.3] would have applied to that term of imprisonment had the term been undischarged. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

U.S.S.G. App. C, Amend. 645 (emphasis added). The "Reason for Amendment" states that this amendment "adds commentary . . . to provide that courts are not prohibited from considering a downward departure in a case in which § 5G1.3(b) would have applied if the term of imprisonment had not been discharged." Id. We

15

have never addressed whether Amendment 645 was clarifying.

Subsequently, § 5G1.3(b) was amended again, effective November 1, 2003, to provide essentially that, where a term of imprisonment results from another offense that is relevant conduct to the instant offense of conviction under sections (a)(1), (a)(2), or (a)(3) of § 1B1.3 and that was the basis for an increase in offense level under Chapters Two or Three:

> (1)  the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2)  the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. App. C, Amend. 660. Amendment 660 also deleted application note 7, supra, and amended it as follows:

> 4.  Downward Departure Provision.—In the case of a discharged term of imprisonment, a downward departure is not prohibited if the defendant (A) has completed serving a term of imprisonment; and (B) subsection (b) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. See § 5K2.23 (Discharged Terms of Imprisonment).

Id.

Finally, Amendment 660 added the following policy statement at § 5K2.23:

16

Discharged Terms of Imprisonment.

> A sentence below the applicable guideline range may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 . . . would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

Id. We have never decided whether any of these amendments were clarifying or substantive.[3] If we were to hold that Amendment 660 was substantive, Gibson's appeal would fail because the 1998 guidelines would apply in their entirety.

Assuming without deciding that the amendment was clarifying, and, therefore, was applicable to Gibson at his sentencing, it appears from the record that the district court implicitly understood and addressed the possibility that the departure provision in the current manual might apply. This is because the district court made two rulings that, unless the court assumed or found the amendments to be clarifying, are not consistent with one another. First, the court found that § 5G1.3(b) had no application to Gibson's "discharged," as opposed to

---

[3] The First Circuit has held that Paragraph 2 of Amendment 660, which addressed how the guidelines would apply where a federal offense was committed while a defendant was on federal or state probation, parole, or supervised release that had been revoked, is substantive. United States v. Crudup, 375 F.3d 5, 10 (1st Cir. 2004), but see United States v. Schafer, 429 F.3d 789, 792 (8th Cir. 2005) (noting that Amendment 660 constituted a "clarification" of § 5G1.3(b)); United States v. Heard, 359 F.3d 544, 550 (D.C. Cir. 2004) (noting that Amendment 660 was added to "clarify" § 5G1.3(b)'s application).

undischarged sentence. This is true—the plain language of § 5G1.3(b) applies only to undischarged sentences, and Gibson's sentence was clearly discharged. However, in the next sentence, the court treated Gibson's objection "as a motion for departure." The 1998 manual did not have, as does the current manual, a provision for a departure because of a "discharged" sentence such as the one in the instant case. The court could not have construed Gibson's objection as a motion for departure under the 1998 edition of the guidelines, and, therefore, the court could only have construed it as such by considering the possibility that such a motion was available to Gibson.

Thus, assuming without deciding that the amendment was clarifying, the court addressed the possibility of a departure by construing Gibson's objection as a motion for departure and then denying the motion. Because the court denied Gibson what essentially amounted to discretionary relief in the form of a downward departure under current guidelines provisions § 5G1.3(b), comment. (n.4) and § 5K2.23, we lack jurisdiction to review Gibson's appeal of that decision "so long as the district court did not incorrectly believe that it lacked the authority to apply a departure." Winingear, 422 F.3d at 1245. As noted above, the court had to at least implicitly believe that a departure was available to Gibson under the current manual because it did not mechanistically apply the 1998 edition that did

18

not provide for such a departure. The court's refusal to exercise its discretion to grant such relief, however, is outside our jurisdiction to entertain. Id.

As to a "variance" as opposed to a departure, we have not held that such variances are outside our jurisdiction to review, but that the decision is more accurately analyzed as a determination of whether the district court imposed a reasonable sentence in light of the sentencing factors set forth at 18 U.S.C. § 3553(a). See United States v. Martinez, 434 F.3d 1318, 1321-22 (11th Cir. 2006); United States v. Scott, 426 F.3d 1324, 1329-30 (11th Cir. 2005) (addressing defendant's argument that district court failed to consider the § 3553(a) factors as grounds for a "variance" and holding that the § 3553(a) factors do not all have to be explicitly considered on the record and the defendant's sentence was reasonable). Here, the court considered the possibility of a variance because the guidelines were not binding on its ability to fashion a sentence. However, looking at Gibson's PSI and considering his history and characteristics, the nature and extent of his criminal history, and the need to protect the public from further harm, the court candidly said that it thought a "very strong" argument could be made for an "upward variance" from the high end of the recommended guideline range. The court ultimately declined to vary upward, sentencing Gibson to 115 months' imprisonment, the highest available sentence recommended by the guidelines.

Given the district court's comment to the effect that the only variance it had considered was upward and beyond the highest sentence recommended by the guidelines, it is clear why the court refused to exercise its discretion to grant a downward "variance" under § 5G1.3 and § 5K2.23, and its explanation was not unreasonable in light of the § 3553(a) factors. See 18 U.S.C. § 3553(a)(1), (2)(B)-(C).

Finally, to the extent that Gibson argues that the district court's decision not to give him credit for time served was unreasonable, we made clear in Winingear that individual sentencing decisions are not subject to reasonableness review. Winingear, 422 F.3d at 1245. As Gibson does not challenge the overall reasonableness of his sentence, there is nothing more to review. We, therefore, affirm Gibson's sentence.

**AFFIRMED.**