UNITED STATES of America, Appellee,

v.

Ralph J. SILKOWSKI, Defendant–Appellant.

No. 713, Docket 93–1520.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1993.

Decided Aug. 11, 1994.

---

James P. Trainor, Albany, NY (Carter, Conboy, Bardwell, Case, Blackmore & Napierski, of counsel), for defendant-appellant.

Kimberly M. Zimmer, Asst. U.S. Atty., N.D.N.Y., Albany, NY (Gary L. Sharpe, U.S. Atty., N.D.N.Y., of counsel), for appellee.

Before: MESKILL, WINTER and PRATT, Circuit Judges.

MESKILL, Circuit Judge:

This appeal raises the issue of whether a district court may consider criminal conduct outside the applicable statute of limitations when determining the appropriate sentence of incarceration and restitution. The United States District Court for the Northern District of New York, Cholakis, *J.*, concluded that it could and relied on such conduct for purposes of calculating both the term of incarceration under the United States Sentencing Guidelines (Guidelines) and the amount of loss the defendant was required to repay as restitution. For the reasons below, we affirm the district court's imposition of the term of imprisonment but vacate the order of restitution and remand that matter for further proceedings consistent with this opinion.

## BACKGROUND

In February 1992, Ralph J. Silkowski (Silkowski) asserts that he received a "target" letter from the United States Attorney's Office for the Northern District of New York (government) alleging that Silkowski violated the social security laws. Following plea negotiations, the parties entered into a plea agreement under which Silkowski would waive indictment and plead guilty to a one count information charging him with theft of public funds in violation of 18 U.S.C. § 641. The target letter was predicated on Silkowski's alleged fraudulent receipt of auxiliary social security disability benefits issued in the name of his ex-wife from on or about May 1979 until May 1991 and in the name of his daughter from on or about May 1979 until November 1989.

Pursuant to the plea negotiations, however, Silkowski apparently conditioned his guilty plea on the understanding that the court, rather than the parties, would determine the aggregate amount of the theft for purposes of sentencing and restitution. To that end, the plea agreement stated:

5. Defendant Ralph J. Silkowski acknowledges that the sentence imposed upon him is ultimately within the sole discretion of the Court and that neither the United States Attorney's Office for the Northern District of New York nor any other United States Attorney's Office can

make any promises or representations as to what sentence the defendant will receive.

6. The Defendant further agrees to make full restitution to the Social Security Administration *for the full amount of the loss suffered by the Social Security Administration said amount of restitution and loss to be determined by the Court.*

(emphasis added).

On March 31, 1993, Silkowski entered a guilty plea in the United States District Court for the Northern District of New York, Cholakis, *J.,* to an information charging one count of violating section 641. Specifically, the information charged:

> *That from on or about May, 1979, through on or about May, 1991,* in the Northern District of New York, the defendant Ralph J. Silkowski, a resident of Potsdam, New York, did knowingly, intentionally and willfully embezzle, steal, purloin and convert to his use a record, voucher, money or thing of value belonging to the United States Department of Health and Human Services, Social Security Administration, that is, Social Security auxiliary benefits checks issued to Magda Silkowski and Crystal Silkowski, *totalling approximately $27,843.50.*

In violation of Title 18, United States Code, Section 641.

(emphasis added).

During the plea allocution, however, defense counsel objected to the dates and amount set forth in the information. The following dialogue ensued:

> THE COURT: You've entered into a plea agreement with the Government. Have you read the plea agreement?
>
> THE DEFENDANT: Yes, sir. I have.
>
> THE COURT: Do you understand it?
>
> THE DEFENDANT: I do.
>
> THE COURT: Were the terms agreed to by you?
>
> THE DEFENDANT: Yes, sir.
>
> MR. TRAINOR [Defense Counsel]: Your Honor, the terms were agreed between Government and Counsel that the dates and amounts recited in the plea agreement

were subject to your interpretation or approval at the time of the sentencing. *In other words, we still have objections to the amount that is ultimately decided to be involved, as well as the dates, and we just want to make sure that is clear on this record.*

> THE COURT: Miss Zimmer [Counsel for the Government].
>
> MS. ZIMMER: Yes, your Honor, the defendant is entering into a plea of the information *which states the essential elements of the offense. However, he does dispute the dates and dollar amounts and wishes to reserve that for sentencing. Additionally, in the plea agreement as it reflects, he disputes that amount for purposes of restitution.*
>
> THE COURT: That may be something taken into consideration by the Probation Department. There will be a hearing before the Probation Department at which time you can make all your objections known. And if you do not rectify them with the Probation Department, I have to be notified substantially ahead of the sentencing of your argument; do you understand that, sir?
>
> MR. TRAINOR: We understand you'll be making the decision as to the amount of restitution and the dates—
>
> \*    \*    \*    \*    \*    \*
>
> THE COURT: Ralph Silkowski, I then ask you, sir, how do you plead to information 93–CR–98, which charges you with a violation of 18 U.S.Code Section 641, guilty or not guilty?
>
> THE DEFENDANT: Guilty.
>
> \*    \*    \*    \*    \*    \*
>
> THE COURT: I ask you: During that period of time, whenever it was, did you take some checks from Social Security that were made payable to Michael [sic?] Silkowski and Crystal Silkowski?
>
> THE DEFENDANT: Yes.
>
> \*    \*    \*    \*    \*    \*
>
> THE COURT: They total approximately twenty-seven thousand dollars?
>
> MR. TRAINOR: We're objecting to the amount involved, your Honor.

THE COURT: Yes, I understand that.

MR. TRAINOR: As well as the dates involved.

THE COURT: Okay. Well, you argue that out with the Probation Department and Miss Zimmer.

(emphasis added).

Prior to sentencing, the United States Probation Department prepared a Presentence Report (PSR). According to the PSR, Silkowski applied for social security disability benefits based on his inability to work as the result of a back injury. In May of 1979, the claim was processed and benefits were authorized. In addition to the disability benefits that he received for himself, both Silkowski's wife and daughter received auxiliary benefits. Silkowski was designated the payee for auxiliary benefits issued to his daughter.

In November 1980, Silkowski's wife and daughter moved out of his residence. Silkowski failed to notify the Social Security Administration that his wife and daughter no longer resided with him and he continued to collect the auxiliary benefits issued on their behalf. The daughter returned in November 1989 and resided with him until April 1991. Silkowski's wife never returned.

The PSR calculated the total amount of financial loss arising from Silkowski's fraudulent receipt of benefits as $24,813.10. In calculating this amount, the PSR aggregated the amount of illegal benefits received by Silkowski for the entire period of time that he resided without his wife or daughter going back to November 1980, when his wife and daughter left.

Silkowski filed an objection to the PSR's determination of total loss. Specifically, Silkowski objected to the PSR's use of the November 1980 date as the beginning of the relevant time period employed to calculate the amount of the loss. Silkowski contended that the amount of loss should be predicated on criminal conduct committed only within the five year statute of limitations period applicable to the offense of conviction. Accordingly, Silkowski urged that illegal benefits received more than five years prior to the date of the waiver and plea could not be

considered in calculating the amount of loss relevant to his sentence.

At sentencing, the district court rejected Silkowski's argument. Although not entirely clear from the record, the court apparently reasoned that the statute of limitations defense was not available to him in a sentencing proceeding either for determining the length of incarceration under the Guidelines or for determining the amount of loss for restitution purposes. With respect to the term of incarceration, the court apparently found that the continual receipt of illegal benefits beginning in November 1980 was relevant conduct to be considered in calculating the total loss applicable to determining the appropriate sentence for a violation of section 641. With respect to the amount of loss for the purposes of determining restitution, the district court found that "the statute of limitations defense is not available at this time." The court then adopted the Probation Department's $24,813.10 calculation of the total amount of loss for restitution purposes as set forth in the PSR.

The district court proceeded to calculate the sentence using the $24,813.10 as the amount of total loss. The court, moreover, found that a two point enhancement for more than minimal planning of the offense was appropriate in this case. See Guidelines § 2B1.1(b)(5)(A). It found the total offense level was ten, the criminal history category was II, and the corresponding sentencing range under the Guidelines was eight to fourteen months imprisonment. The district court then denied Silkowski's motion for a downward departure and sentenced him to eight months incarceration to be followed by two years of supervised release, ordered repayment of the entire $24,813.10 as restitution and ordered payment of a $50 special assessment. This appeal followed.

DISCUSSION

Silkowski argues that the five year statute of limitations period, see 18 U.S.C. § 3282, applicable to 18 U.S.C. § 641 prohibits the district court from relying on any violation of that statute that occurred more than five years prior to March 31, 1993, the date of his waiver of indictment and plea, to determine

the amount of loss used to calculate his sentence. Silkowski insists that the statute of limitations bars consideration of any fraudulent receipt of monthly social security benefits not within the limitations period despite Silkowski's conduct that occurred more than five years prior to the date of his plea. He contends that violations not within the statute of limitations period can neither be considered as relevant conduct to determine the length of his sentence pursuant to Guidelines § 1B1.3(a)(2) nor be relied on to determine the amount of loss subject to a restitution order.

We disagree with Silkowski that the district court was prohibited from relying on conduct outside the statute of limitations period in calculating the term of imprisonment under the Guidelines. We do agree, however, that the district court is prohibited from ordering restitution for losses attributed to conduct that was not part of the offense of conviction because of the applicable statute of limitations in this case.

### A. *Term of Incarceration*

The Guidelines expressly provide for consideration of "relevant conduct" in determining the base offense level applicable in a case where the conduct is "part of the same course of conduct or common scheme or plan as the offense of conviction." Guidelines § 1B1.3(a)(2). The provision applies only to an "offense[ ] of a character for which [Guidelines] § 3D1.2(d) would require grouping of multiple counts," *i.e.*, an offense for which "the offense level is determined largely on the basis of the total amount of harm or loss ... or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior," such as Guidelines § 2B1.1(b)(1), the guideline applicable in this case. Guidelines § 3D1.2(d).

■ Theft of public funds through the fraudulent receipt of social security benefits in violation of section 641 on a continual monthly basis is clearly such an offense. *See* Guidelines § 3D1.2(d) (stating that offenses covered by Guidelines § 2B1.1 are to be grouped under this subsection); Guidelines § 1B1.3, comment. (n. 3); Guidelines

§ 3D1.2, comment. (n. 6) ("Subsection (d) will likely be used with greatest frequency. It provides that most property crimes ... where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together"); *see also United States v. Kappes*, 936 F.2d 227, 230 (6th Cir.1991) (Guidelines § 1B1.3(a)(2) applicable to offenses involving fraud and property crimes because "determination of which conduct is relevant under the Guidelines is simplified [since] the base offense level turns on quantity"). Accordingly, Silkowski's conviction on one count of violating section 641 triggers the consideration of relevant conduct set forth in section 1B1.3(a)(2).

■ Silkowski contends that the government has not established that his acts were part of a common scheme or plan. We need not decide that issue. Our cases hold that, in determining a base offense level under section 1B1.3(a)(2), criminal acts constituting the "same course of conduct" need not be part of "a common scheme or plan." *United States v. Perdomo*, 927 F.2d 111, 114–15 (2d Cir. 1991) (citing *United States v. Santiago*, 906 F.2d 867 (2d Cir.1990)). Rather, the sentencing court may look to "whether the defendant repeats the same type of criminal activity over time" and acts need not "be 'connected together' by common participants or by an overall scheme." *Id.* at 115. Thus, our analysis of whether the defendant's acts are relevant to the district court's base offense level calculation under section 1B1.3(a)(2) "focuses ... on whether defendant has engaged in an identifiable 'behavior pattern' of specified criminal activity." *Id.* (quoting *Santiago*, 906 F.2d at 872). Where, as here, the defendant engages in a clearly identifiable and repetitive " 'behavior pattern' of specified criminal activity," such as the continual illegal receipt and conversion of social security benefits, the district court may rely on such conduct as "relevant" under the Guidelines regardless of whether that conduct was charged as part of the offense of conviction.

Statute of limitations jurisprudence does not alter this analysis when determining length of incarceration. The Guidelines expressly provide for consideration "without

limitation, [of] any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." Guidelines § 1B1.4. As such, we have rejected the placing of "any inherent temporal limitation on the transactions to be considered but noted only that any amounts considered must have been part of the same course of conduct as the counts leading to conviction." *Santiago*, 906 F.2d at 873. Indeed, the consideration at sentencing of criminal acts not within the offense of conviction, far from being a unique product of the Guidelines, has been an established component of the district court's sentencing discretion long before the enactment of section 1B1.3(a)(2). *See United States v. Quintero*, 937 F.2d 95, 97 (2d Cir.1991) ("[l]ong prior to sentencing guidelines it was settled that a sentence on a count of conviction could be based on conduct charged in dismissed counts and even on counts resulting in an acquittal") (citations omitted).

■ Our cases make clear, moreover, that the relevant conduct provision of section 1B1.3(a)(2) is to be interpreted broadly to include: conduct for which the defendant was acquitted, *see, e.g., United States v. Concepcion*, 983 F.2d 369, 387 (2d Cir.1992), *cert. denied sub nom. Frias v. United States*, —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993); conduct related to dismissed counts of an indictment, *see, e.g., Quintero*, 937 F.2d at 97; conduct that predates that charged in the indictment, *see, e.g., United States v. Cousineau*, 929 F.2d 64, 68 (2d Cir.1991); and conduct not charged in the indictment, *see, e.g., Perdomo*, 927 F.2d at 114. Our refusal to limit temporally section 1B1.3(a)(2) to acts that are part of the same course of conduct committed within the period covered by the applicable statute of limitations, therefore, is consistent with the broad interpretation we have previously given to section 1B1.3(a)(2). Accordingly, the district court properly relied on conduct committed outside the five year statute of limitations period as "relevant conduct" in calculating the term of Silkowski's imprisonment under the Guidelines. *Accord United States v. Lokey*, 945 F.2d 825, 840 (5th Cir.1991).

B. *Restitution*

■ Where the issue is the amount of loss to be repaid by a defendant under a restitution order, however, the scope of conduct that a district court may consider in determining the amount of loss is governed by different considerations than those set forth in the relevant conduct provision of the Guidelines. Rather, the Guidelines authorize a district court to "enter a restitution order *if such order is authorized under 18 U.S.C. §§ 3663–3664*." Guidelines § 5E1.1(a)(1) (emphasis added). Thus, 18 U.S.C. §§ 3663–3664, the Victim and Witness Protection Act of 1982 (VWPA), not the Guidelines themselves, ultimately governs a sentencing court's authority to determine and impose a restitution penalty on a criminal defendant.

The VWPA provides that, in determining the amount of restitution to be paid by a criminal defendant, the district court "shall consider the amount of the loss sustained by any victim as a result of the offense ... and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a). Prior to 1990, the VWPA was construed as allowing restitution only for an amount of loss caused by the specific conduct forming the basis for the offense of conviction. *Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990); *see also United States v. Cook*, 952 F.2d 1262, 1265–66 (10th Cir.1991) (defendant required to pay restitution only for losses directly resulting from counts to which defendant pled guilty, not all counts set forth in the indictment); *United States v. Stone*, 948 F.2d 700, 703–04 (11th Cir.1991) (where defendant pled guilty to one count of mail fraud and other counts were dismissed, district court could not order restitution in amount that exceeded loss stemming from the one count of conviction); *United States v. Sharp*, 941 F.2d 811, 814–15 (9th Cir.1991); *United States v. Wainwright*, 938 F.2d 1096, 1098 (10th Cir.1991).

■ In 1990, Congress amended the VWPA to allow a district court to "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3). The amendment serves to clarify the scope of *Hughey* as allowing restitution beyond the offense of

conviction "when the defendant agrees to such in a plea agreement." *United States v. Soderling,* 970 F.2d 529, 533 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2446, 124 L.Ed.2d 663 (1993). Our cases make clear, moreover, that section 3663(a)(3) applies retroactively in cases, such as this, where the defendant enters into a plea agreement on a date after the provision was enacted by Congress. *See United States v. Rice,* 954 F.2d 40, 44 (2d Cir.1992). Section 3663(a)(3), therefore, applies in this case even though a significant portion of the loss that the government seeks to recover was the direct result of conduct committed prior to November 1990.

■■■■ At a minimum, then, the district court could only order restitution for losses that Silkowski either expressly agreed to or directly caused by the conduct composing the offense of conviction. Turning first to Silkowski's agreement to pay restitution, we find nothing in the record to support a finding that Silkowski agreed to repay an amount that exceeded the loss caused by the offense of conviction, whatever the scope of that offense. The plea agreement contains no reference to the $24,813.10 loss calculated in the PSR and relied on by the district court in its restitution order. We can find nothing in that agreement, moreover, that implies that Silkowski agreed to pay an amount of restitution in excess of that otherwise required by the applicable law.

The plea agreement's general requirement that Silkowski make full restitution for the loss suffered, moreover, fails to alter our conclusion that the defendant in this case did not agree to pay for any losses that exceeded those caused by the offense of conviction. The agreement provided that the "said amount of restitution and loss [would] be determined by the Court." To that end, Silkowski made repeated and vigorous objections to the dates and amounts set forth in the information during the plea colloquy and, as the government concedes, he reserved the

right to raise the statute of limitations defense at sentencing with respect to the restitution issue in addition to sentencing issues under the Guidelines. On this record, therefore, we find it difficult to accept, and the government does not argue, that either the express terms of the plea agreement or defendant's admissions during the plea colloquy or sentencing obligated him to repay an amount pursuant to section 3663(a)(3) beyond that directly caused by conduct within the temporal limits of the offense of conviction.[1]

■■ We next turn our attention to whether the district court properly determined the amount of loss to be repaid under its restitution order in accordance with *Hughey*'s requirement that the VWPA authorizes restitution for losses caused only by the offense of conviction, absent an express agreement to the contrary. As such, we must first ascertain the specific offense of conviction. If the district court derived the amount of loss that Silkowski must repay from conduct within the offense of conviction, the order passes muster under *Hughey* and progeny. On the other hand, if the district court based its determination of loss on conduct outside the offense of conviction, no matter how "relevant" that conduct might have been in a Guidelines sentencing context, the restitution order would run afoul of *Hughey.*

■■ Here, the government concedes in its brief, as it must, that the information did not charge and Silkowski did not enter a plea to a continuing offense pursuant to which Silkowski could have been "prosecuted for conduct that predates the statute of limitations." *Cf., e.g., United States v. All Star Indus.,* 962 F.2d 465, 477 (5th Cir.) (five year statute of limitations does not bar repayment for conduct committed more than five years before return of indictment where corporation was charged with a single continuing conspiracy to violate the antitrust laws), *cert. denied sub nom. Midco Pipe & Tube v.*

---

1. While we decline to reach the broader issue of whether the particular language contained in this plea agreement is, as a matter of law, insufficient to bind a defendant to repay a loss pursuant to section 3663(a)(3) beyond that caused by the offense of conviction in all cases, the government would be well advised to give greater consideration to the impact of the VWPA and *Hughey* in future plea negotiations where it seeks restitution of a specific amount from a defendant pursuant to a plea agreement.

*United States,* —— U.S. ——, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992). Although no Court of Appeals has decided the issue to date, we note that several district courts have construed a violation of section 641 as a noncontinuing offense regardless of the language contained in the underlying charging document, *see, e.g., United States v. Beard,* 713 F.Supp. 285, 290–91 (S.D.Ind.1989); *United States v. Mendoza,* 122 F.Supp. 367, 368 (N.D.Cal.1954), while others have found to the contrary, *see, e.g., United States v. Fleetwood,* 489 F.Supp. 129, 131 (D.Or.1980). Were we to conclude that the information in this case did in fact charge a continuing offense, however, a serious issue would exist as to whether Silkowski entered a valid guilty plea to that information.[2] Indeed, while Silkowski admitted to violating section 641, he disputed the dates and amounts set forth in the information at the plea allocution, elements that, contrary to the government's representations at that proceeding, would be crucial to determining the continuing nature of the offense. In light of the government's claim that it did not charge a continuing offense, therefore, we are satisfied that the offense of conviction, the one-count violation of section 641, is not a continuing offense in this case.

Viewed from this perspective, the conduct within the offense of conviction in this case is circumscribed by the five year statute of limitations period set forth in 18 U.S.C. § 3282. As such, conduct committed within the offense of conviction is only that conduct going back five years from the date of the information and waiver of indictment, March 31, 1993. *See* 18 U.S.C. § 3282 (except as otherwise provided for by law no person may be prosecuted for any offense committed more than five years from the date of the indictment). Put another way, any violation

of section 641 committed by Silkowski *prior* to March 31, 1988, is not conduct within the offense of conviction. Because, absent an agreement to the contrary, *Hughey* and its progeny limit the amount of loss for restitution purposes under the VWPA to losses directly attributable to conduct underlying the offense of conviction, we agree that the statute of limitations applies to the calculation of the amount of loss for purposes of restitution in this case. Accordingly, at resentencing, Silkowski can be ordered to reimburse the government for only that amount of loss caused by violations of section 641 that occurred on or after March 31, 1988.

## CONCLUSION

For the reasons stated, we vacate the sentence as to restitution only and remand for resentencing.

---

2. We assume, and the record nowhere indicates to the contrary, that the district court and the defendant did not disagree as to the scope of the offense of conviction. To that end, we interpret the district court's finding at sentencing that the statute of limitations did not apply as evidence that the district court believed that it could rely on conduct *outside* the scope of conviction as "relevant" to a determination of the amount of loss for restitution purposes. Were we convinced, however, that in rejecting the statute of limitations defense, the district court predicated

its restitution order on the view that all of the conduct and amount alleged in the information were within the offense of conviction, we would have serious concerns that Silkowski did not enter, indeed, could not have entered, a valid guilty plea to the offense as charged; *i.e.,* a defendant cannot enter a voluntary and knowing plea to a specific offense of conviction at the time of the plea allocution and then wait to have the offense of conviction determined afterwards at sentencing.