# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 10, 2012       Decided December 28, 2012

No. 10-3093

UNITED STATES OF AMERICA,
APPELLEE

v.

ERNEST BERNARD MOORE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00250-1)

*Marie Park*, appointed by the court, argued the cause and filed the briefs for appellant.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the briefs were *Ronald C. Machen, Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *John P. Mannarino*, and *Ellen Chubin Epstein*, Assistant U.S. Attorneys.

Before: BROWN, *Circuit Judge*, and EDWARDS and SILBERMAN, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: On November 9, 2009, appellant Ernest Bernard Moore pled guilty to three counts of fraud. Count One ("Student Aid Fraud") charged Moore with knowingly and willfully executing a scheme to obtain student aid funds by fraud, false statement, and forgery in violation of 20 U.S.C. § 1097(a). Count Two ("Bank Fraud") charged Moore with knowingly executing a scheme to defraud certain banks by means of fraud and fraudulent pretenses, representations, and promises in violation of 18 U.S.C. § 1344. Count Three ("Social Security Fraud") charged Moore with knowingly and willfully converting Social Security Benefits for his own use after the intended beneficiary was no longer in Moore's care in violation of 42 U.S.C. § 408(a)(5). On September 23, 2010, the District Court sentenced Moore to concurrent terms of 50 months' imprisonment for all three counts, to be followed by concurrent supervised-release terms of 36 months for Student Aid Fraud and Social Security Fraud and 60 months for Bank Fraud. In addition, the District Court ordered Moore to pay $759,593.86 in restitution to all of the victims of his offenses, not merely the victims of his offenses of conviction.

Moore appeals from the District Court's judgment on several grounds:

- He first contends that the trial judge plainly erred during the plea colloquy when he read the wrong portion of the statute in describing the elements of the offense relating to Student Aid Fraud, thereby rendering Moore's guilty plea unknowing.

- Moore also contends that the District Court erred in accepting as undisputed the calculations of his Criminal History in the Presentence Report ("PSR") after Moore's counsel orally withdrew his earlier

written objections to the calculations. The PSR calculations increased Moore's Criminal History Category from II to V under the Sentencing Guidelines.

- Moore further claims that his Plea Agreement, which stated that he "agree[d] to make restitution to all victims of [his] criminal conduct and not merely for those victims included in the counts to which [he] agree[d] to plead guilty," did not unambiguously empower the District Court to award restitution to victims of Moore's conduct other than his offenses of conviction.

- Finally, Moore asserts that he was deprived of his Sixth Amendment right to counsel because his trial attorney was ineffective. He claims in particular that counsel's ineffective representation prejudiced him at sentencing.

Moore requests that this court set aside his conviction for Student Aid Fraud and remand for resentencing with a corrected Criminal History Category of II, as stipulated in the parties' Plea Agreement. He also requests that the District Court's order of restitution be reduced so that it is consistent with applicable law or remanded so that the trial judge can clarify the basis for the restitution order.

We agree that the District Court erred in describing the elements of Student Aid Fraud; however, the error did not affect Moore's substantial rights. We find no merit in any of the remaining claims raised by Moore on appeal. We therefore affirm the judgment of the District Court.

## I.  Background

The Information and Statement of the Offense implicating Moore included the following counts:

> **Student Aid Fraud (Count One).** Between 2002 and 2006, Moore knowingly and willfully executed a scheme to obtain eleven federally insured student loans by fraud, false statement, and forgery. Using the name "Bernard Glenn-Moore" and a fraudulent Social Security number, he submitted a fraudulent loan request for each of the eleven loans. He obtained $88,351 through this scheme.

> **Bank Fraud (Count Two).** Between 2002 and 2007, Moore applied for and obtained ten private student loans from four different banks. On these loan applications, he used fraudulent Social Security numbers and falsely stated that his name was "Bernard Glenn-Moore" or "Tracy G. Cannady." He obtained $188,777 through this scheme.

> **Social Security Fraud (Count Three).** Moore was responsible for Warren Baker's care and legitimately served as Baker's Representative Payee for the collection of Social Security benefits. However, Moore continued to receive Social Security payments on Baker's behalf after he ceased caring for Baker. Moore fraudulently received a total of $13,257 through this scheme.

Statement of the Offense at 1-8, *reprinted in* Joint Appendix ("J.A.") 22-29; *see also* Information at 1-4, *reprinted in* J.A. 8-11.

The charges against Moore never reached trial because he elected to enter into a Plea Agreement with the Government.

As part of the Plea Agreement, which was executed on September 30, 2009, Moore agreed to plead guilty to the offenses listed in the Information. Plea Agreement at 1-9, *reprinted in* J.A. 13-21. He also agreed that, "[i]n addition to any restitution that must be ordered by the Court," he would "make restitution to all victims of [his] criminal conduct and not merely for those victims included in the counts to which [he] agree[d] to plead guilty." The parties modified the Plea Agreement on October 1, 2009. Pursuant to this modification, the following marked language was stricken from the Agreement:

> In addition to any restitution that must be ordered by the Court, your client agrees to make restitution to all victims of your client's criminal conduct and not merely for those victims included in the counts to which your client agrees to plead guilty. The government contends that pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A(a)(3), the order of restitution imposed by the Court shall be in the amounts and to the victims indicated in Exhibit 1 to this letter. Your client contends that the restitution amounts are less. ~~but acknowledges that some amount of restitution is owed to each of the victims listed in Exhibit 1 to this letter.~~ The parties will rely on the Court, with the assistance of the United States Probation Office, to resolve this issue.

*Id.* at 5; *reprinted in* J.A. 17. The parties disagree over the significance of this modification of the Plea Agreement.

On November 9, 2009, Moore executed a Statement of the Offense in which he stipulated that he committed not only the offenses described in the Information, but also additional bank fraud and credit card fraud. Statement of the Offense at 1-17, *reprinted in* J.A. 22-38. The additional bank fraud to

which Moore stipulated included five loans between 2003 and 2008 in the aggregate amount of $20,600. Moore listed his name as "Bernard Moore" or "Tracy G. Cannady" on these loan applications and used a fraudulent Social Security number. Moore also stipulated that, from 2003 to 2009, he opened more than ninety credit card accounts using aliases and bogus Social Security numbers. The Government estimated that the outstanding balance from these credit card transactions totaled $469,099.52.

A plea hearing was held before the District Court on November 9, 2009. During this hearing, after acknowledging that he had "thoroughly" reviewed the Plea Agreement, Moore pled guilty to the offenses described in the Information. The District Court judge then informed Moore of "the nature of each charge to which [he was] pleading," as required by Rule 11(b)(1)(G) of the Federal Rules of Criminal Procedure. With respect to Count One, the trial judge told Moore that the Government "would have to prove, first, that you misapplied federal financial aid funds, and, two, that you did so knowingly and willfully." This was a mistake because the Information charged Moore with "knowingly and willfully execut[ing] a scheme to obtain by fraud, false statement, and forgery" numerous student loans. Nonetheless, Moore told the trial judge that he understood the elements of the count pertaining to Student Aid Fraud and that they accurately described his offenses. The trial judge's explanations of the Bank Fraud and Social Security Fraud charges were consistent with the Information.

After the trial judge had explained each charge, the prosecution proffered the facts that it was prepared to prove in the event that the case proceeded to trial. This proffer was consistent with the charges in the Information. Moore acknowledged that he had heard the prosecution's statement,

and Moore's defense counsel agreed that the Government could prove the elements of the charges in the Information. The only disagreement between the parties concerned the amount that would be due in restitution. After confirming that Moore willingly admitted the offenses at issue, the District Court accepted Moore's guilty plea. Only sentencing remained to be completed.

For the purpose of calculating Moore's sentence, the Plea Agreement estimated Moore's Criminal History to be Category II under the Sentencing Guidelines. *See generally* U.S. SENTENCING GUIDELINES MANUAL (2008). On this point, the Plea Agreement stated that the designation of Category II was based on information that was available to the Government as of September 25, 2009. After the execution of the Plea Agreement, however, the Probation Office prepared a PSR for the purpose of applying the Sentencing Guidelines to Moore. The PSR calculated Moore's Criminal History to be Category V, not Category II. In its Memorandum in Aid of Sentencing, the Government explained that, "[a]t the time of the plea, the government was unaware of the full extent of [Moore's] criminal history. The government now adopts the Criminal History calculation in the PSR, which places [Moore] in Criminal History Category V."

Moore's counsel initially objected to the PSR's calculation of Criminal History and the probation officer incorporated this objection in her addendum to the PSR. At the sentencing hearing, however, Moore's counsel withdrew his objection, stating that:

> [F]or purposes of what the Court has to find . . . the calculations by the Probation Officer [in the PSR] of 57 to 71 [months' sentence] are calculated correctly with the Criminal History to a Category 5, so, therefore, that's the

range. We had [in] our plea agreement 33 to 41 [months' sentence], but the calculations of the Probation Officer for the purposes of these proceedings and the Court, we accept as accurate.

Tr. of Sentencing Hr'g at 2-3, *reprinted in* J.A. 101-02.

The District Court then sentenced Moore to 50 months, in the middle of the adjusted range of 46 to 57 months recommended by the Government. The District Court further ordered Moore to pay $759,593.86 in restitution. In announcing this sentence, the trial judge emphasized Moore's lengthy criminal history, "all of it involving fraud and lying, perjury, lying under oath, taking money that doesn't belong to you; manipulating the system; using other names, credit cards; [and] getting taxpayer money." The trial judge described Moore as an "incredibly intelligent skillful con man," and expressed the hope that Moore's sentence might deter other potential offenders and might "convince" Moore that he "should not reengage [in] this kind of behavior."

## II.  Analysis

### A.  Plea Colloquy

Before the District Court may accept a defendant's plea agreement, Rule 11 of the Federal Rules of Criminal Procedure  requires, *inter alia*, that the District Court advise the defendant of the "nature of each charge to which the defendant is pleading." *See* FED. R. CRIM. P. 11(b)(1)(G). Rule 11 sets forth a detailed procedure for the plea colloquy that is "designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary . . . [and] to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." *United States v. Dewalt*, 92

F.3d 1209, 1211-12 (D.C. Cir. 1996) (alteration in original) (quoting *McCarthy v. United States*, 314 U.S. 459, 465 (1969)) (internal quotation marks omitted).

Rule 11(h) states that "[a] variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights." FED. R. CRIM. P. 11(h). In *United States v. Vonn*, 535 U.S. 55, 63 (2002), the Court addressed "whether Congress's importation of the harmless-error standard into Rule 11(h) without its companion plain-error rule was meant to eliminate a silent defendant's burdens under the Rule 52(b), [FED. R. CRIM. P. 52(b)], plain-error review, and instead give him a right to subject the Government to the burden of demonstrating harmlessness." The Court then said "[i]f the answer is yes, a defendant loses nothing by failing to object to obvious Rule 11 error when it occurs. We think the answer is no." *Id*. The Court explained that, if Rule 52(b) plain-error review did not apply,

> a defendant could choose to say nothing about a judge's plain lapse under Rule 11 until the moment of taking a direct appeal, at which time the burden would always fall on the Government to prove harmlessness. A defendant could simply relax and wait to see if the sentence later struck him as satisfactory; if not, his Rule 11 silence would have left him with clear but uncorrected Rule 11 error to place on the Government's shoulders.

*Id*. at 73. *Vonn* firmly rejects this view. The Court in *Vonn* made it clear that, although the harmless-error rule applies to alleged errors under Rule 11, Rule 11(h) does not excuse a silent defendant from the burdens of plain-error review. *Id*. at 71-72.

As "to the scope of an appellate court's enquiry into the effect of a Rule 11 violation, whatever the review, plain error or harmless," *Vonn* confirmed that a reviewing court may assess not only "the four corners of the transcript of the plea hearing and Rule 11 colloquy," but also "other portions . . . of the limited record" that indicate whether the defendant knew the nature of the charges against him. *Id.* at 74-75 (citation omitted) (noting "transcripts covering [the defendant's] first appearance and arraignment" as examples of other portions of the record that "may be considered"). And in assessing a claim that the trial judge erred during the Rule 11 colloquy, it is well understood that Rule 11 "does not *require* that the district court spell out the elements of the charge in order to inform the defendant adequately." *In re Sealed Case*, 283 F.3d 349, 354 (D.C. Cir. 2002) (citing *United States v. Liboro*, 10 F.3d 861, 865 (D.C. Cir. 1993)). Instead, a plea colloquy must, "based on the totality of the circumstances, lead a reasonable person to believe that the defendant understood the nature of the charge." *United States v. Ahn*, 231 F.3d 26, 33 (D.C. Cir. 2000) (citations omitted) (internal quotation marks omitted). This is the focus of any inquiry on appeal. Therefore, a trial judge's failure to fully spell out the elements of a charge, without more, may be insufficient to sustain a challenge under Rule 11.

In normal circumstances, if a Rule 11 error occurs during a plea hearing and the defendant objects, the Government carries the burden of demonstrating that the error was harmless. *In re Sealed Case*, 283 F.3d at 351-52; *see also* FED. R. CRIM. P. 11(h). If, however, an alleged error is committed without objection from the defendant, then the defendant carries the burden on appeal of demonstrating "plain error" pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure. *See United States v. Dominguez Benitez*, 542 U.S. 74, 80 (2004) (confirming that "when a defendant is

dilatory in raising Rule 11 error . . . reversal is not in order unless the error is plain" (citations omitted)). Because Moore raised no objections during his plea hearing, save for expressing concerns about the amount of restitution, he now bears the burden of showing that, during the plea colloquy, (1) the District Court erred, (2) the error was clear or obvious, (3) the error affected his substantial rights, and (4) the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732-36 (1993) (citation omitted) (internal quotation marks omitted).

In determining whether the District Court's colloquy with the defendant "would lead a reasonable person to believe that the defendant understood the nature of the charge," *Dewalt*, 92 F.3d at 1212 (citation omitted) (internal quotation marks omitted), we consider a number of factors. "In addition to the [trial] judge's inquiry, the circumstances we consider include: the defendant's level of intelligence; whether he was represented by counsel; the complexity of the charge against him; and his own statements at the plea hearing." *In re Sealed Case*, 283 F.3d at 352 (citation omitted).

At Moore's plea colloquy, the District Court judge misread 20 U.S.C. § 1097(a), the statute under which Moore pled guilty to Student Aid Fraud. Section 1097(a) covers, in relevant part:

> [a]ny person who knowingly and willfully embezzles, misapplies, steals, obtains by fraud, false statement, or forgery, or fails to refund any funds, assets, or property . . . .

*Id.* In reciting the grounds for Moore's guilty plea for Student Aid Fraud, the District Court judge stated that, "[w]ith respect to student aid fraud, the Government would have to prove,

first, that you *misapplied* federal financial aid funds, and, two, that you did so knowingly and willfully." Tr. of Plea Hr'g at 9, *reprinted in* J.A. 47 (emphasis added). In the Information, Moore's charge for Student Aid Fraud is described as "knowingly and willfully execut[ing] a scheme to obtain [student aid funds] by fraud, false statement, and forgery" through "fraudulent loan request[s]." Information at 1, *reprinted in* J.A. 8.

Misapplication of funds is one theory of liability under Section 1097(a). However, Moore was charged under Section 1097(a) with having obtained funds by fraud and false statement. In a case involving the unlawful *obtaining* of funds under Section 1097(a), a defendant need not have misapplied or converted the funds in question. The prosecutor needs only to prove that the defendant knowingly and willfully obtained funds by fraud or false statements. *United States v. Ranum*, 96 F.3d 1020, 1030-31 (7th Cir. 1996) (finding liability under Section 1097(a) based on false statements without misapplication of funds or conversion). Moore is correct in asserting that he was not charged with misapplying student aid funds and that there is no such evidence in the record. Rather, Moore was charged with violating Section 1097(a) because he "knowingly and willfully executed a scheme to obtain by fraud, false statement, and forgery" federally guaranteed student aid funds. *See Ranum*, 96 F.3d at 1031 (holding that, "[u]nder a plain reading of [Section 1097(a)], the knowing and willful making of a false statement [is] sufficient to establish the crime"); *see also United States v. Gibson*, 770 F.2d 306, 307 (2d Cir. 1985) (per curiam) (upholding a conviction under Section 1097(a) based on defendant's "obtaining student loans by fraud and false statement").

We find that the District Court undoubtedly erred during the plea colloquy when it incorrectly described the nature of the charge covered by Count One. Moore therefore easily satisfies the first and second requirements of the *Olano* plain error test. *See* 507 U.S. at 732-34. However, the Government correctly points out that the trial judge's error did not affect Moore's substantial rights under the third requirement of the *Olano* test. *See id.* at 734. This is so because, on this record, Moore has not "show[n] a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Robinson*, 587 F.3d 1122, 1130 (D.C. Cir. 2009) (quoting *Dominguez Benitez*, 542 U.S. at 83).

Our review of the record confirms that Moore knowingly pled guilty to Student Aid Fraud as described in Count One of the Information. There is nothing to suggest that he was the least bit confused by the terms of the Plea Agreement. Moore's intelligence and sophistication, the simplicity of the charges against him, and his own statements at the plea hearing leave little doubt about this. The District Court described Moore as a "really bright fellow." Tr. of Sentencing Hr'g at 37, *reprinted in* J.A. 136. Moore was represented by counsel throughout the proceedings. The Section 1097(a) false-statement charges against him are "straightforward," *Ranum*, 96 F.3d at 1025, and Moore's statements throughout the proceedings indicate his comprehension of the false-statement charges against him, *see, e.g.*, Tr. of Plea Hr'g at 4-5, *reprinted in* J.A. 42-43 (acknowledging recent review of Plea Agreement before entering plea); *see also* Tr. of Sentencing Hr'g at 28, *reprinted in* J.A. 127 (expressing "deep remorse" for how he "pursued [his] education"). It is clear that Moore was fully aware of the charges against him.

Furthermore, the record is devoid of any indication that Moore even considered a plea other than guilty. Prior to the

plea hearing, Moore stipulated in his Statement of Offense to the false-statement conduct that constituted Student Aid Fraud. In addition, Moore and his counsel both confirmed that he had reviewed the written Plea Agreement in advance of the plea hearing. And the record indicates that Moore benefitted from the Plea Agreement because the Government agreed to a two-level reduction in Moore's offense level for sentencing in exchange for his guilty plea.

It is also significant that, following the prosecutor's proffer of facts, Moore indicated that he had heard "what the prosecutor said [he] did" and affirmed that he did not disagree with the Government's description of his student-aid fraud. Tr. of Plea Hr'g at 18, *reprinted in* J.A. 56. Thus, the Government convincingly argues that, throughout this case, Moore understood the nature of the charges against him on all counts. There is no indication that, but for the District Court's error in reciting the elements of Moore's Student Aid Fraud, Moore's plea would have been different. Therefore, Moore has failed to demonstrate plain error as required by *Dominquez Benitez. See* 542 U.S. at 83. Likewise, Moore has failed to demonstrate any effect on "the fairness, integrity, or public reputation of judicial proceedings" based on the District Court's error, as required under the fourth element of *Olano*. 507 U.S. at 736 (citation omitted) (internal quotation marks omitted). The trial judge's misstatement of the elements of Count One during the plea colloquy did not result in plain error.

## B. Criminal History Calculations

Moore also objects to the District Court's acceptance of the PSR's calculation of his Criminal History under the Sentencing Guidelines. Because Moore waived his earlier written objection on this issue at the sentencing hearing, he

can no longer pursue this issue on appeal. *See United States v. Rogers*, 918 F.2d 207, 212 (D.C. Cir. 1990) ("If . . . a lawyer has acquiesced in a ruling he once claimed was erroneous, the lawyer must reassert his prior objection if he expects to preserve it for appeal.") (citation omitted). Furthermore, Moore's withdrawal of his objection constituted an invitation to any error that the PSR's Criminal History calculation created, further precluding appeal. *See Wagner v. Taylor*, 836 F.2d 596, 599 (D.C. Cir. 1987) ("It has long been settled that on appeal a litigant cannot avail himself of an error that he induced the court under review to commit." (footnote omitted)); *United States v. Wiggins*, 530 F.2d 1018, 1020 (D.C. Cir. 1976) (an appellant is "precluded from assigning as error an instruction which his counsel specifically requested and approved").

Moore filed written objections to the Criminal History calculations in the PSR, which the probation officer acknowledged in an addendum. In its Memorandum in Aid of Sentencing, the Government acknowledged that, in the Plea Agreement, the parties had stipulated that Moore's Criminal History was Category II. However, "[a]t the time of the plea, the government was unaware of the full extent of [Moore's] criminal history." Gov't Mem. in Aid of Sentencing at 8 n.4, *reprinted in* J.A. 75. Once Moore's additional offenses came to light, the Government amended its assessment of Moore's Criminal History and adopted the PSR's Category V Criminal History calculation.

At the sentencing hearing Moore, through counsel, withdrew his earlier written objections, stating that "the calculations by the probation officer of 57 to 71 [months] are calculated correctly with the Criminal History to a Category [V], so, therefore, that's the range [for sentencing]." Tr. of Sentencing Hr'g at 2, *reprinted in* J.A. 101. Moore then stated

that he "accept[ed] as accurate" the "calculations of the probation officer" and was "completely satisfied . . . with the accuracy of the [PSR]." *Id.* at 2-3, *reprinted in* J.A. 101-02. The Government moved for an additional two-level reduction to Moore's sentence, which the District Court took into account in sentencing Moore to 50 months. Based on Moore's unequivocal withdrawal of his objections to the PSR's calculation of Moore's Criminal History, we decline to review Moore's claims.

Moore contends that there could have been no strategic reason for his trial counsel's withdrawal of the objection to the Criminal History calculation and, therefore, he should be permitted to pursue this issue on appeal. This court has no sure way to determine whether counsel's concession was "strategic." It is possible that Moore may have waived his objection to the Criminal History calculation in exchange for the two-level reduction in his sentence. Or, as the Government suggests, Moore's attorney may have withdrawn the objection because he determined that the PSR calculation of Moore's Criminal History was correct. We do not know and it does not matter. Even if we could determine counsel's reasons for the concession, the District Court was entitled to rely on counsel's withdrawal of his earlier objection. This is the consequence of a waiver. *See United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002) (refusing to consider defendant's objections to Criminal History calculation after defendant withdrew his earlier objection prior to sentencing and holding that "[a] party who identifies an issue, and then explicitly withdraws it, has waived the issue").

Finally, Moore argues that even if the District Court reasonably accepted the PSR's Criminal History calculation, the court failed to enter sufficient factual findings on the subject and, therefore, the case should be remanded for such

findings. Rule 32(i)(3)(B) requires that, at sentencing, the court "must – for any disputed portion of the [PSR] or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." FED. R. CRIM. P. 32(i)(3)(B). The Government correctly points out that Rule 32(i)(3)(B) is inapposite because, after Moore's withdrawal of his objections, there was no "disputed portion" of the PSR. As a result, the District Court properly relied on Rule 32(i)(3)(A), which states that, at sentencing, the court "may accept any undisputed portion of the [PSR] as a finding of fact." FED. R. CRIM. P. 32(i)(3)(A); *see also, e.g.*, *United States v. Ventura*, 650 F.3d 746, 749 (D.C. Cir. 2011) (relying on the PSR, "which under Rule 32(i)(3)(A) the court may find as fact unless disputed"), *cert. denied*, 132 S. Ct. 1856 (2012). Once Moore withdrew his objections to the PSR, the District Court properly adopted the then-undisputed calculation of Criminal History as a finding of fact.

## C.  Restitution

Moore also objects to the amount of restitution ordered by the District Court, both in the aggregate and to numerous specific victims. The parties' modified Plea Agreement expressly assigned authority to the District Court, with the assistance of the United States Probation Office, to resolve any disputes over restitution. We review *de novo* issues of statutory interpretation, *e.g.*, *United States v. Papagno*, 639 F.3d 1093, 1095-96 (D.C. Cir. 2011) (citation omitted), and the District Court's interpretation of the parties' plea agreement, *e.g.*, *United States v. Anderson*, 545 F.3d 1072, 1077 (D.C. Cir. 2008) (citation omitted).

"Federal courts have authority to order restitution solely pursuant to statute." *Id.* (citation omitted). The court may order restitution "to any victim of [a qualifying] offense." 18 U.S.C. § 3663(a)(1)(A); *see also* 18 U.S.C. § 3663A(a)(1). "The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." 18 U.S.C. § 3663(a)(1)(A). And the court may "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3); *see also* 18 U.S.C. § 3663A(a)(3) ("The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."); *see also, e.g.*, *United States v. Silkowski*, 32 F.3d 682, 688-89 (2d Cir. 1994) (noting that Section 3663(a)(3) provides courts with the authority to order "restitution beyond the offense of conviction when the defendant agrees to such in a plea agreement" (citation omitted) (internal quotation marks omitted)).

The parties' Plea Agreement authorizes the District Court to set the amounts of restitution due to all of Moore's victims pursuant to both Section 3663 and 3663A. Plea Agreement at 5, *reprinted in* J.A. 17. More importantly, the Plea Agreement explicitly provides that restitution will be due to victims of all of Moore's criminal conduct, not just his offenses of conviction. *Id.*

Moore argues that the language stricken from the Plea Agreement, which required his acknowledgement that some restitution was due to each of his victims, indicates that the parties did not agree that restitution was due to all victims. The Government counters that the language retained in the Plea Agreement is clear on its face and, therefore, the stricken language is irrelevant. *See Iberdrola Renewables, Inc. v. FERC*, 597 F.3d 1299, 1304 (D.C. Cir. 2010) ("If a contract is

not ambiguous, extrinsic evidence cannot be used as an aid to interpretation." (citation omitted) (internal quotation marks omitted)). We agree that the stricken language is irrelevant because its deletion in no way undercuts Moore's promise to pay restitution to victims of all of his criminal conduct, not just his offenses of conviction.

Furthermore, as noted above, the Plea Agreement clearly delegates authority to the District Court to resolve any differences between the parties regarding the amount of restitution to be paid and to whom. This delegation of authority eliminates any potential ambiguity in the parties' agreement on restitution. *See United States v. Heard*, 359 F.3d 544, 554 (D.C. Cir. 2004) (finding permissible delegation where "*both* parties agreed to disagree – and expressly agreed to leave the matter for the district court to resolve"); *see also Anderson*, 545 F.3d at 1080 n.7 (approving of a delegation to the district court of authority to determine the amount of restitution and noting that "while the parties may agree to a specific amount or to a cap on restitution, such an agreement is not required under section 3663(a)(3)" (citations omitted)).

The parties surely were within their rights to write the Plea Agreement as they did because "any means [of establishing the amount due in restitution] *acceptable to the defendant* is proper. . . . [And a] defendant may . . . delegate the power to the judge." *United States v. Peterson*, 268 F.3d 533, 535 (7th Cir. 2001). In sum, the "parties' conduct plainly evinced their intent that the District Court could order restitution" to persons other than the victims of the offenses to which Moore pled guilty and that the District Court's restitution determination was proper. *Anderson*, 545 F.3d at 1079 (citing *Heard*, 359 F.3d at 554).

Finally, Moore contends that the District Court's restitution order was inappropriate because the trial judge failed to check the box on the Judgment form to specify that the "[r]estitution amount [is] ordered pursuant to plea agreement." Judgment at 6, *reprinted in* J.A. 153. The Government responds that the District Court's decision not to check the box was appropriate because it determined the amounts of restitution due to Moore's victims based on the authority granted to the court under the Plea Agreement, not based on any amounts of money specified in the Plea Agreement. We agree.

In sum, we hold that the Plea Agreement was lawful and reasonable, and that the District Court properly exercised its authority under the agreement. We also find that the District Court's determinations on restitution were lawful and fully justified. We find no basis to reverse or remand the order of restitution.

## D. Alleged Ineffective Assistance of Counsel at Trial

Finally, Moore claims that he was deprived of his Sixth Amendment right to counsel because his trial attorney was ineffective. Under established law, it is very difficult for a convicted defendant to prevail on a claim of ineffective assistance of counsel:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also, e.g.*, *United States v. Soto*, 132 F.3d 56, 59 (D.C. Cir. 1997) (applying *Strickland*). "The latter prong requires the defendant to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Cassell*, 530 F.3d 1009, 1011 (D.C. Cir. 2008) (citation omitted) (internal quotation marks omitted). Our review of counsel's conduct is "highly deferential" and we are bound by "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Moore supports his claim of ineffective assistance with only a bare sketch of alleged errors committed by his trial counsel. First, Moore argues that

the papers filed by [trial] counsel show a glaring ignorance on basic principles of both plea proceedings and the Sentencing Guidelines. For example, in the substantial papers filed by Moore's counsel, he repeatedly challenged factual matters to which Moore had already admitted by signing the Statement of the Offense. Many of the factual disputes raised in counsel's pleadings did not affect the issue of sentencing – which should have been counsel's focus once the plea had been entered and the Statement of Offense had been signed. If counsel believed the facts concerning guilt were still in dispute, he should have

either advised his client not to take the plea or later advised him to move to withdraw the plea.

Appellant's Br. at 29 (citation omitted). Second, Moore asserts that

[trial] counsel also did not have a basic grasp of the Sentencing Guidelines themselves. Counsel argued that interest and finance charges should not be included in the restitution figure. For support for this incorrect proposition, counsel repeatedly cited to U.S.S.G. §2B1.1(3)(D)(i). However, that section applies to establishing the amount of loss used for establishing a base offense level, not toward restitution for which the Guidelines includes interest and finance charges.

*Id*. at 29-30 (citation omitted). Moore then concludes that "counsel's ineffective representation prejudiced Moore at sentencing." *Id*. at 30.

Moore's critique of his trial counsel may have some force. The problem, however, is that the conclusion that Moore draws from his critique of trial counsel – *i.e*., that counsel's ineffective representation prejudiced Moore at sentencing – has not been demonstrated. We agree with the Government that Moore's "conclusory claims come nowhere close to overcoming the strong presumption that appellant's counsel rendered adequate assistance. At any rate, even if they did, appellant has not shown a reasonable probability that, absent these 'deficiencies,' appellant would have received a different sentence." Appellee's Br. at 50. We agree that there is nothing in this record to indicate that but for counsel's alleged poor performance, the result of the sentencing proceeding would have been different and more favorable to Moore. In short, we cannot find that Moore suffered "prejudice" as required by *Strickland*.

Furthermore, it is noteworthy that, at the close of sentencing, the District Court judge declared that Moore's trial counsel "did as best as he possibly could to present [Moore] in the most favorable light." Tr. of Sentencing Hr'g at 41, *reprinted in* J.A. 140. This declaration by the trial judge, who was responsible for sentencing, certainly undercuts Moore's contention that his trial attorney was ineffective. The District Court's assessment at least suggests that Moore's 50-month sentence "was a product of appellant's brazen criminal conduct and not some deficiency in counsel's performance." Appellee's Br. at 51.

### III. Conclusion

For the foregoing reasons, the judgment of the District Court is affirmed.